UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 15-CV-62026 COHN/SELTZER

S. RYAN STRAUSS,

    Plaintiff,

v.

THE CBE GROUP, INC. and
LIVEVOX, INC., and
JOHN DOE,

    Defendants.

_____/

## DECLARATION OF TERRY JOHNSON

On this day, February _3rd, 2016, I, TERRY JOHNSON declare under penalty of perjury, as provided for by the laws of the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. My legal name is Terry Duane Johnson.

2. I am over the age of 18 and am otherwise competent to make this Declaration.

3. I am employed by The CBE Companies, Inc. ("CBE"), as Architect Manager. The CBE Group, Inc. ("CBE Group"), is a subsidiary of CBE.

4. The information contained in this declaration is based upon my personal knowledge gained through my employment with CBE, as well as my review of relevant business records and the specific electronic information and data related to the account at issue in this litigation.[1]

---

[1] All documents reviewed in preparation of this Declaration were made in the regular course of CBE Group's business and it was the regular course of CBE Group's business to make such records within a reasonable time of the transactions or occurrences reflected in the documents.

Page **1** of **6**

5. CBE Group is a debt collection agency.[2]

6. Through my employment by CBE, I have gained extensive knowledge of the telephonic hardware and software systems utilized by CBE Group in its business practices.

7. I am also intimately familiar with the software and hardware systems utilized by CBE Group to document activity taken with respect to accounts referred to CBE Group for collection by creditors.

8. CBE Group's software system allows employees of the company to input certain information related to the account, such as a summary of any telephone conversations on an account. However, employees do not indicate the dates or times related to inbound or outbound calls. That information is systematically added to the account notes by the software system whenever a called is placed on an account. Moreover, once information is uploaded in the system with respect to an account, it cannot be removed, period. The reason the software is designed in this manner is to ensure the account notes accurately and reliably reflect all activities taken on an account.

9. In April 2014, CBE Group received an account from Verizon New England, Inc. ("Verizon"). The debtor on the account is Jose Baez.

10. Information related to the account was provided electronically by Verizon. The data was then loaded into CBE Group's system.

11. Verizon provided only contact information for the debtor and certain information related to the debt (e.g. the amount due and that the account was associated with landline telephone service). Verizon did not provide any information demonstrating

---

[2] This statement should not be construed to mean that CBE Group meets the definition of "debt collector" under the FDCPA/FCCPA with respect to this case or that the obligation at issue in this case was a "debt" as defined by the FDCPA/FCCPA.

whether the debt associated with Jose Baez's account ("the debt") was incurred for personal, family, or household purposes or for business purposes.

12. CBE Group is not in possession, custody or control of any documentation demonstrating the purpose(s) for which the debt was incurred nor is CBE otherwise aware of the purpose(s) for which the debt was incurred.

13. At the time of placement, CBE Group received telephone number 754-200-4379 from Verizon.

14. 754-200-4379 was the only telephone number CBE Group received from Verizon.

15. From April 14, 2014, until September 25, 2014, CBE Group placed a total of 26 calls to 754-200-4379. Calls were placed on the following dates/times:

> **April 2014**: 14th (3:56pm), 15th (1:38pm), 18th (12:24pm), 19th (9:39am), 21st (12:07pm), 22nd (10:44am, 4:01pm), 23rd (10:37am, 4:43 pm), 28th (10:21am), 30th (12:31pm)
>
> **May 2014**: 5th (9:09am), 8th (1:54pm), 12th (3:17pm), 15th (2:08pm), 20th (5:36pm). 29th (8:26 pm)
>
> **June 2014**: 4th (7:50pm), 12th (9:55am), 16th (4:02pm), 19th (4:56pm), 24th (7:16pm)
>
> **July 2014**: 1st (7:42pm), 18th (1:01pm)
>
> **August 2014**: 15th (5:38pm)
>
> **September 2014**: 25th (8:11pm)

16. Prior to April 16, 2014, CBE Group's processes identified telephone number 754-200-4379 as associated with a landline.

17. After April 15, 2016 but before April 18, 2014, CBE Group's processes identified telephone number 754-200-4379 as associated with a cellular telephone.

18. Of the 26 calls placed to 754-200-4379, six (6) were answered.

19. The six (6) answered calls took place on April 22, 2014, April 23, 2014, April 30, 2014, May 5, 2014, June 4, 2014, and June 19, 2014.

20. It is CBE Group's policy to record all telephone conversations that result from incoming calls placed to or outgoing calls place from CBE Group regarding accounts referred for collection. Telephone conversations are systematically recorded by equipment integrated into CBE Group's telephone system, i.e. employees do not need to "turn on" the recording system for calls to be recorded.

21. I have listened to all six (6) call recordings. The transcripts attached hereto as "Exhibit 1" accurately reflect the substance of those calls.

22. At no point during any conversation, did the answering party indicate to CBE Group that he was not Jose Baez, that Jose Baez could not be reached at the number called or that CBE had called a wrong number. *See,* Exhibit 1.

23. Had the answering party indicated that he was not Jose Baez, that Jose Baez could not be reached at the number called or that CBE Group had called a wrong number, CBE would have ceased calling the number.

24. With the exception of the calls placed on April 14 and 15, 2014, all calls placed to 754-200-4379 were dialed solely by CBE Group's Manual Clicker Application ("MCA").

25. The MCA is a proprietary software/hardware system developed by an affiliate of CBE Group for the express purpose of ensuring compliance with the requirements of the Telephone Consumer Protection Act ("TCPA").

26. As part of my employment and education, I have gained extensive knowledge of various types of telephone systems.

27. The MCA does not use a random or sequential number generator and was designed to make it impossible for the equipment used to have the capacity to store, produce or dial numbers using a random or sequential number generator as required to meet the definition of "automated telephone dialing system" under the TCPA.

28. The MCA was also designed to make it impossible for the system to dial predictively; it does not use predictive algorithms. The MCA does not make internal or automatic decisions regarding how many lines to dial nor does it automatically adjust call rates to match agents with calls based upon availability. The MCA is therefore not a "predictive dialer."

29. Likewise, the MCA does not automatically determine when numbers are to be called. The MCA does not have this timing function.

30. No calls can be placed via the MCA without human intervention.

31. All calls made via the MCA require manual initiation for each and every phone number dialed.

32. CBE Group uses various sources to determine whether any telephone number related to an account is a cellphone.

33. When a number is identified as a cellphone number, it is segregated and thereafter called exclusively using the MCA.

34. In order for a number to be called using the MCA, the CBE Group employee using the MCA must manually initiate the call by using a computer component (i.e. the computer's mouse or keyboard enter key) to physically "click". The employee's act of "clicking" is what initiates the call to an identified cell phone number.

35. The rate at which MCA agents are allowed to initiate calls in the MCA is also controlled by human decisions made by employees within CBE Group's Internal Command Center, which monitors and adjusts call pacing and line allocation accordingly, in a manual and non-predictive manner.

36. When a call is initiated by a CBE Group employee via the MCA, the call does not pass through a telephone system or dialing device that is an automatic telephone dialing system, predictive dialer, or that uses a random or sequential number generator.

37. When a call is initiated by a CBE Group employee using the MCA, the telephone system does not utilize lists of phone numbers that the equipment dials without human intervention and then assists in predicting when an agent is available to take the call.

38. CBE Group placed no calls to 754-200-4379 using a prerecorded or artificial voice message.

Executed on this _3rd_ day of February, 2016.

_____
Terry Johnson

Page 1

```
- - - - - - - - - - - - - - - - - - -
IN RE:  STRAUSS V. CBE
- - - - - - - - - - - - - - - - - -/


              RECORDED TELEPHONE CALLS




    TRANSCRIBED BY:    K. Maureen Boles














                    Pages 1 - 7
```

Page 2

1     (Recorded Call #1)
2     CALLER:  My name is Janee Rouzer (phonetic).
3 This call may be monitored or recorded for quality
4 assurance purposes.  Is Jose available?
5     (End of recording.)
6     - - - - -
7     (Recorded Call #2)
8     CALLER:  Hi.  My name is Jesse Tobar
9 (phonetic), and this call may be monitored or
10 recorded for quality assurance purposes.
11     May I please speak with Jose Baez?
12     UNIDENTIFIED MALE:  Who is this?
13     CALLER:  My name is Jesse Tobar.  May I
14 please speak with Jose Baez?
15     UNIDENTIFIED MALE:  Who is -- who are you --
16 what is this regarding?
17     CALLER:  This is regarding a personal
18 business matter with Jose Baez.  Are you Jose
19 Baez?
20     UNIDENTIFIED MALE:  Well, hold on a second.
21     CALLER:  Okay.
22     UNIDENTIFIED MALE:  What company are you
23 calling from?
24     CALLER:  I'm calling from CBE Group.
25     UNIDENTIFIED MALE:  What is that?

Page 3

1     CALLER:  We handle personal business
2 matters, sir.
3     UNIDENTIFIED MALE:  I don't know what that
4 means.  What does that mean?
5     CALLER:  Well, I can go further in-depth as
6 soon as I verify that I'm speaking to the right
7 party.  I wouldn't want to give any information
8 out to the wrong person.  So is this Jose Baez?
9     UNIDENTIFIED MALE:  Oh, man.
10     (End of recording.)
11     - - - - -
12     (Recorded Call #3)
13     CALLER:  Hello.  This is Zackal Hassan
14 (phonetic), and this call may be monitored or
15 recorded for quality assurance purposes.
16     May I speak with Jose Baez?
17     UNIDENTIFIED MALE:  Which company is this?
18     CALLER:  This is the CBE Group, sir.
19     (End of recording.)
20     - - - - -
21     (Recorded Call #4)
22     CALLER:  Hello.  My name is Dustin Thorne
23 (phonetic), and this call may be monitored or
24 recorded for quality assurance purposes.
25     (End of recording.)

Page 4

1     - - - - -
2     (Recorded Call #5)
3     UNIDENTIFIED MALE:  Hello?
4     CALLER:  This is (inaudible) Palomino
5 (phonetic), and this call may be monitored or
6 recorded for quality assurance --
7     UNIDENTIFIED MALE:  No, no, no.  No
8 recordings.  Wait.  Who is this?
9     CALLER:  I'm just trying to reach Jose Baez.
10     UNIDENTIFIED MALE:  No, no.  No recordings.
11 No recordings.  Can you take it off recorded?
12     CALLER:  No.  No, sir.
13     UNIDENTIFIED MALE:  Take it off -- don't
14 call me with recorded lines.
15     CALLER:  I mean, I don't know who I'm
16 speaking with, sir.  Is this Jose Baez?
17     (End of recording.)
18     - - - - -
19     (Recorded Call #6)
20     CALLER:  Hello.  My name is Shakenya
21 Williams (phonetic), and this call --
22     UNIDENTIFIED MALE:  Hello.
23     CALLER:  -- may be monitored or recorded for
24 quality assurance purposes.
25     UNIDENTIFIED MALE:  Hello?

Page 5

1   CALLER: Yes. I'm looking for Jose Baez.
2   UNIDENTIFIED MALE: Hold on. Who is this
3   calling?
4   CALLER: Jose Baez, do you know that person?
5   UNIDENTIFIED MALE: Ma'am, ma'am, first of
6   all, I don't want recorded telephone calls, so --
7   and I think I've told you guys, don't call me on
8   recorded telephone lines.
9   The other thing I was going to say is it
10  just took you 40 seconds to answer the phone.
11  What is this?
12  CALLER: Yes. We're looking for Jose. Do
13  you know that person?
14  UNIDENTIFIED MALE: Well, hold on. Why did
15  it -- well, I don't want to talk on a recorded
16  line, but why did it take 40 seconds for you guys
17  to call -- to answer the phone?
18  CALLER: Okay. Sir, we can try to call back
19  at a better time. Thank you.
20  UNIDENTIFIED MALE: Well, no, no, no, but
21  don't call me on a recorded line. Do not -- I do
22  not -- I'm not -- I don't want recorded phone
23  calls.
24  CALLER: Okay.
25  UNIDENTIFIED MALE: And I would just ask

Page 6

1   that you stop calling me with these calls.
2   CALLER: Okay. If --
3   (End of recording.)
4   (End of transcription.)

Page 7

1   TRANSCRIBER'S CERTIFICATE
2
3   STATE OF FLORIDA      :
4   COUNTY OF HILLSBOROUGH :
5
6   I, K. Maureen Boles, certify that I was
7   authorized to and did transcribe from digital audio
8   the foregoing proceedings, and that the transcript is
9   a true and complete record of such transcription.
10  I further certify that I am not a relative,
11  employee, attorney, or counsel of any of the parties,
12  nor am I a relative or employee of any of the
13  parties' attorneys or counsel connected with the
14  action, nor am I financially interested in the
15  outcome of the foregoing action.
16  Dated this 21st day of January, 2016, IN THE
17  CITY OF TAMPA, COUNTY OF HILLSBOROUGH, STATE OF
18  FLORIDA.
19
20          *K. Maureen Boles* (signature)
21
22          K. Maureen Boles

**Riesdorph Reporting Group, Inc. (813) 222-8963**