UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 0:15-cv-62026-COHN/SELTZER

S.RYAN STRAUSS,
Plaintiff,
v.
THE CBE GROUP, INC., and
VERIZON NEW ENGLAND, INC.
Defendant.

_____

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE THE EXPERT REPORT

Plaintiff, S. RYAN STRAUSS, through counsel, submits this response in opposition to Defendant, THE CBE GROUP, INC. ("CBE"), Motion to Exclude the Expert Witness Testimony of Jeffrey A. Hansen [DE 52].

### INTRODUCTION

Plaintiff has sought out the services of Jeffrey Hansen, whose extensive background and expertise, which appears to be undisputed, is in the area of evaluating and analyzing electronic data related to outbound calls, electronic systems and/or telephone dialing systems, analyzing telephone dialing system(s) and wireless and wireline communications. [DE 49; p. 2-4].

Plaintiff has employed Mr. Hansen *in-part* to evaluate whether telephone dialing systems used by Defendant to place calls at issue in this case meet the definition of an "automatic telephone dialing system" ("ATDS") as defined by the Telephone Consumer Protection Act, 47 U.S.C. § 227. ("TCPA"), to assist the trier of fact on the how CBE placed outbound telephone calls to Plaintiff, why CBE's Manual Clicker Application ("MCA"), contrary to Mr. Terry Johnson's sworn testimony, is not capable in-and-of-itself of placing telephone calls, and the specifications of CBE's dialing device when used to dial has the characteristics of a telephone dialing system that has the capacity to store or produce numbers to be called, using a random or

1

sequential number generator or is a predictive dialer. [DE 49; Pg. 5:18-25]. Ultimately, the means by which CBE dials cellular telephone numbers involves technical and sophisticated procedures. Since Mr. Hansen has previously prepared expert reports in at least two cases involving CBE and is intimately familiar with CBE's MCA and their Noble dialing device, his testimony will help a judge of facts.

To that end, Defendant has misinterpreted Mr. Hansen's role in this case, and in its error it has moved to exclude Mr. Hansen's opinions on grounds that they are impermissible as lay testimony or legal conclusions, [*52, Pgs*. 4-5], and not based on sufficient evidence, *Id. at 6-10*. For the reasons that follow Plaintiff respectfully requests that this Court deny Defendant's Motion.

## STANDARD OF REVIEW

The admission of expert evidence is govern by Federal Rule of Evidence 702, as explained by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and its progeny. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). "Under Rule 702 and *Daubert,* district courts must act as "gatekeepers" which admit expert testimony only if it is both reliable and relevant." *Id.* However, "the *Daubert* factors ... simply are not applicable to [non-scientific] testimony, whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology behind it." *Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1017 (9th Cir. 2004) (emphasis in original) (internal quotation marks and citations omitted). In such situations, Rule 702 should be "construed liberally." *United States v. Hankey,* 203 F.3d 1160, 1168 (9th Cir. 2000) (citation omitted). "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony. The rule clearly is one of admissibility rather than exclusion." *Sancom, Inc. v. Qwest*

*Commc'ns Corp.*, 683 F. Supp. 2d 1043, 1051 (D.S.D. 2010) (citing *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001)). "The exclusion of an expert's opinion is proper only if it is so fundamentally unsupported that it can offer no assistance to the jury." *Sancom*, 683 F. Supp. 2d 1043 at 1051 (citing *Wood v. Minn. Mining & Mfg. Co.,* 112 F.3d 306, 309 (8th Cir. 1997)).

The Eleventh Circuit has adopted a three-part analysis for determining whether the party who proffers expert evidence is entitled to have that evidence admitted. These three factors must be established by a preponderance of the evidence, *Rink*, 400 F.3d 1286 at 1292, and are stated as: (1) whether the expert is qualified to testify competently regarding the matters he intends to address; (2) whether the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) whether the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Quiet Tech. DC–8, Inc. v. Huerl–Dubois UK Ltd.,* 326 F.3d 1333, 1340 (11th Cir. 2003).

## ARGUMENT

As noted above, the CBE does not appear to litigate the qualifications "regarding the matters upon [Mr. Hansen] intends to address." *Quiet Tech. DC–8, Inc at 1340*. Thus, the Court need only address the remaining two factors above in determining if proffered evidence is entitled to weight as opposed to admissibility. *Id*. As noted by the defense, this cases involves similar expert testimony involving the use of an ATDS under the TCPA which was previously ruled upon by this court in *Legg v. Voice Media Group, Inc*., 13-62044-CIV-COHN, 2014 WL 1767097, at *4 (S.D. Fla. May 2, 2014)(Cohn, J.). For those reasons, Plaintiff will address his response accordingly.

### Mr. Hansen does not impermissibly opine on questions of law

3

Mr. Hansen's testimony does not intend to testify that CBE's dialing device "meets the legal definition of an ATDS per se. See, *Legg v. Voice Media Group, Inc*., 13-62044-CIV-COHN, 2014 WL 1767097, at *4 (S.D. Fla. May 2, 2014)(Cohn, J.). Instead, Mr. Hansen, intends to assist the trier of fact in determining that the "manual clicker application" or "MCA" when used with or "connected" to the Noble Dialing Device, has "…the characteristics of the telephone dialing system [and] meet[s] the definition of equipment that has the *capacity* (emphasis added) to store or produce numbers to be called, using a random or sequential number generator, and has the capacity to call such numbers. Specifically, CBE calls numbers that are stored as a list, which itself is stored in a table of a database." [DE 49 Pg. 15 Lines 1-9].

Mr. Hansen's expert report is predicated upon how the industry has defined an ATDS or a predictive dialer for at least three decades before congress passed legislation. [See Generally DE 49]. In fact, the vast majority of Mr. Hansen's report involves the history of ATDS leading up to the TCPA and the various administrative agencies interpretations involving ATDS and predictive dialers. *Id*. It would be hard to imagine a circumstance for an expert to provide an opinion without referring to industry standards, statutes or legislation. As outlined by the FCC:

> "The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." The statutory definition contemplates autodialing equipment that either stores or produces numbers. It also provides that, in order to be considered an "automatic telephone dialing system," the equipment need only have the "capacity to store or produce telephone numbers (emphasis added). . .."
>
> We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for that purpose, including when the caller is calling a set list of consumers. We also reiterate that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of "autodialer" for the

4

> same reason. We also find that callers cannot avoid obtaining
> consent by dividing ownership of pieces of dialing equipment that
> work in concert among multiple entities. (FCC-15-72A1 ¶¶ 10-24)
>
> A predictive dialer has the capacity of an ATDS, not because it
> predicatively dials calls, but simply that it has the capacity to automatically call
> numbers stored in a list.(FCC Order 03-153 ¶ 131)

[DE 49 Pgs.18 and 19]

Thus, as noted above, Mr. Hansen's opinion, is not a legal conclusion, but merely an opinion based upon his professional experience, industry standards, legislation and administrative orders, on how CBE's equipment is in-fact an ATDS with the same capabilities which, ironically is the same language used by Mr. Terry Johnson in his deposition and CBE in determining that their MCA coupled with the Noble Dialing Device is not an ATDS or predictive dialer.

Contrary to Mr. Johnson's sworn testimony, Mr. Hansen intends to testify "that the characteristics of [CBE's] telephone dialing system…has the capacity to store or produce numbers to be called, using a random or sequential number generator, and the capacity to call such numbers." [DE 49 Pg. 15]. This is a permissible instance of expert testimony. *See*, *Sancom, Inc. v. Qwest Communications Corp.*, 683 F. Supp. 2d 1043 at 1053 (holding it is permissible for expert testimony to show that a specific set of facts does not fall within a statutory definition). Mr. Hansen's testimony demonstrates that CBE's equipment, as provided by the FCC, has the capacity to store and produce random and sequential numbers. *Id*.

Thus, where an expert has established a nexus between legal criteria and the facts of the case, the testimony is admissible. *TC Sys. Inc. v. Town of Colonie, New York*, 213 F. Supp. 2d 171, 182 (N.D.N.Y. 2002) ("If a proper foundation is laid and Kravtin can establish a nexus between the FCC criteria and the facts here, her testimony may be appropriate."); *Cf. CFM*

5

*Commc'ns, LLC v. Mitts Telecasting Co.*, 424 F. Supp. 2d 1229, 1235 (E.D. Cal. 2005) (excluding expert opinion on FCC regulations that reads like a legal brief).

Ironically, CBE argues that is okay for their self-serving corporate representative to give an opinion as to how they generate phone calls, without the opportunity for the Plaintiff to use the same resources and industry standards they rely upon to come to a different conclusion. [Ex. A – Def. Depo.] [Ex. B – Defendant's Interrogatories Para. 3]

Finally, contrary to the Plaintiff's expert in *Legg*, Mr. Hansen's Expert Report thoroughly discussed the history and legislation of an ATDS as a technical term, which occurred decades before Congress even wrote legislation. Mr. Hansen's opinion is not one of his own, but one that precedes him by thirty years. Thus, Mr. Hansen's opinion testimony should be permitted.

## MR. HANSEN'S OPINIONS ARE BASED ON AN ADEQUATE FACTUAL FOUNDATION

Mr. Hansen has rendered an opinion on the capacity of CBE's equipment to dial and store random and sequential numbers, and to do so he has reviewed several materials including documentation on CBE's Noble System Dialing Device and MCA. Contrary to the Plaintiff's Expert in *Legg*, Mr. Hansen is extremely familiar with CBE's dialing apparatus and features. Additionally, Mr. Hansen's testimony is not based primarily upon his review of a "client handbook" or "which purports to set forth instructions and descriptions relating to [CBE's] systems." *Id*. And, this is not a situation whereby Mr. Hansen is providing an opinion as to a third party's involvement in the means of dialing the plaintiff. Indeed, Mr. Hansen has:

- Reviewed the Manual Clicker Application Manual [See Ex - C. - Hansen Aff. ¶¶6, 7, 9, 10, 11]

- Read the Noble Systems predictive dialer manuals in numerous other matters, including *Almaraz v. CBE Group*, Case No. 2:14-cv-00699-GMN-GWF (D. Nevada), and spoken with Noble Systems representatives when shopping for predictive dialers myself. [See Ex - C. - Hansen Aff. ¶¶4,8]

- Reviewed The CBE Group's Manual for the clicker application manual in *Lucille Miller v The CBE Group* Case No. 3:15-cv-00033-JAJ-RAW (E.D. IOWA) and *Paul Stemple v The CBE Group* Case No. 5:15-CV-00279-VAP-KK (C.D. Cal). [See Ex - C. - Hansen Aff. ¶¶4,8]

- Offered an opinion in the form of a written report on CBE Group's predictive dialing systems in *Almaraz v. CBE Group* Case No. 2:14-cv-00699-GMN-GWF (D. Nevada). [See Ex - C. - Hansen Aff. ¶¶4,8]

- Reviewed the deposition transcripts regarding CBE Groups, predictive dialing systems in *Lucille Miller v The CBE Group* Case No. 3:15-cv- 00033-JAJ-RAW (E.D. IOWA) and *Linda Blair and Diane Deal v The CBE Group* Case No. 13-cv-134-MMA(WVG)(S.D. Cal).

- Reviewed a patent application for a clicker program, "CBE patent application."

[DE 49, Pg. 6 Lines 18-28; Pg. 7, Lines 1-13] [Ex. A - Hansen Declaration].

Thus, unlike in *Legg*, Mr. Hansen is basing his opinion on matters he has personal knowledge on because he has intimate knowledge on CBE's means of placing and dialing cellular telephones through the use of their Noble Dialing System. In fact, what seems to be astonishing is while CBE has denied possession of the Noble Dialing Manual in the instant case, CBE has produced the Noble Dialer Manual to Mr. Hansen previously and Mr. Hansen can authenticate those documents. [See Ex - C. - Hansen Aff. ¶¶4,8] [See. Ex. D– Defendant's Response to Plaintiff's Requests for Production – Third Amended – Para. 7-11].

Furthermore, Mr. Hansen conclusions do not "stem from a faulty premise." [DE 52, Pg. 6]. In fact, it is the Defendant that intends to muddy the water by redefining the "clicker" application as the "dialing device" and the Noble Systems dialer and Livevox dialer as the "carrier." In Mr. Johnson's deposition, he testifies that all of the calls placed by CBE before June 12, 2014 were placed with the Noble Systems Predictive Dialer. [Ex. B – Def Depo 23:25, 24:1-4, 61:8-25, 62:1-25, 108:8-25,109:1-25, 111:1-11, 122:10-18, 122:24-25).] Later, in the same statement, Mr. Johnson testifies, "that all calls placed after that point were placed using

Defendant's Manual Clicker Application or "MCA." *Id*.  There is merit to Mr. Hansen's argument that CBE placed calls to Plaintiff before and after June 12, 2014, because Mr. Johnson testified to such.

Finally, Plaintiff agrees that if Mr. Hansen's testimony or opinion was based solely on unauthenticated documents, such as "screen shots from websites" or "based primarily upon his review of a client handbook" that his testimony may otherwise by inadmissible.  However, that is far from present in the current case. Mr. Hansen has stated that his opinion, among the various factors articulated above, is based upon his own personal experience working with the Noble Dialing Device.  [DE 49] Hansen does in-fact know the dialing device that CBE "actually used" when calling the Plaintiff, and the "manner" in which they were used.  *Id*.  Mr. Hansen knows and has opined that the equipment conforms with the specification and capacity on it's [website]. *Id*. Since Mr. Hansen's opinion regarding the equipment at issue is based upon sufficient facts and data, his report is probative and Defendant's Motion to Exclude should be denied.

## CONCLUSION

For the foregoing reasons Plaintiff respectfully requests that Defendant's Motion to Exclude the Expert Witness Testimony of Jeffrey Hansen, [DE No. 52], be denied.

Dated: March 2, 2016.
Respectfully submitted,

/s/ Steven Holzman
Steven Holzman
Florida Bar 667617
Attorney for Plaintiff
4400 N. Federal Hwy.
Lighthouse Point, FL 33064
561-789-5366
scholzmanlaw@gmail.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 2, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Steven Holzman

**SERVICE LIST**
**GOLDEN SCAZ GAGAIN, PLLC**
Mr. Dale Golden, Esq.
201 N. Armenia Ave.
Tampa, Florida 33609-2303
Telephone: 813-251-5500
Facsimile: 813-251-3675

**GOLDEN SCAZ GAGAIN, PLLC**
Mr. Benjamin W. Raslavich
201 N. Armenia Ave.
Tampa, Florida 33609-2303
Telephone: 813-251-5500
Facsimile: 813-251-3675