Danny J. Horen, Esq. (NV Bar No. 13153)
danny@kazlg.com
Kazerouni Law Group, APC
7854 W. Sahara Avenue
Las Vegas, NV 89117
Telephone: (800) 400-6808x7
Facsimile: (800) 520-5523

*Attorneys for Plaintiff*
Myriam Almaraz

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MYRIAM ALMARAZ, <br><br> *Plaintiff*, <br><br> v. <br><br> THE CBE GROUP, INC., a subsidiary of CBE COMPANIES; and CBE COMPANIES, INC., <br><br> *Defendants*. | Case No. <br><br> **RULE 26(a)(2)(b) EXPERT DISCLOSURE AND WRITTEN REPORT OF JEFFREY A. HANSEN** |

# EXPERT REPORT OF JEFFREY A. HANSEN

My name is Jeffrey A. Hansen. I am an adult over the age of 18, a resident of the state of California, and I reside at 2625 Kings View Circle, Spring Valley, CA 91977. Unless indicated otherwise, I have personal knowledge of each of the matters stated herein, and if called to testify I could and would testify competently about them.

I was asked to prepare this report by Plaintiffs' counsel in the above-captioned matter, Kazerouni Law Group, APC., in support of Plaintiff's Designation of Expert Witnesses Pursuant to Fed. R. Civ. P. 26(a)(2)(b) executed on September 24, 2014.

I have been retained in this case at a rate of $300 per hour, for all services rendered, and $380 per hour for depositions.

*Experience and Credentials.*

I am the principal of Hansen Legal Technologies, Inc. My firm is in the business of handling Information Technology, including investigations and analysis of electronic data. I have served as an expert or consultant in more than 50 TCPA class action lawsuits, and as an expert or consultant in numerous other civil cases.

With regard to my experience as an expert and consultant in legal matters, generally, I have frequently served as an expert witness and consultant to law firms in conducting computer forensic analyses. I have also assisted in electronic discovery issues.

Specific to this case, my firm was retained to assist Plaintiffs and their counsel in evaluating and analyzing electronic data related to outbound calls and other electronic data associated with computer systems and/or telephone dialing

systems that may have been used by The CBE Group, Inc. and/or its agents. In that respect, I have extensive experience with data warehousing, including data warehousing related to telemarketing and autodialers in general. I am familiar with the procedures involved in such practices, and I have personally engaged in data warehousing regarding the compilation of certain lists, including demographic and target audience lists for telemarketing, and have personally repaired defective lists to eliminate improperly formatted and corrupted data.

I also frequently act as a consultant to companies that engage in the use of autodialers, and I am familiar with their use and procedures, and the technical aspects of that business. In that capacity, I have assembled, configured, maintained and operated all aspects of autodialers, and interfaced with the telecommunications providers through whose networks the autodialers operate.

I have set up and maintained all aspects of predictive dialers and autodialers, from predictive dialers operating with just three telephone lines to outbound call centers with over 1,000 phone lines. When building these systems, I have used various software and hardware solutions for predictive and autodialers, both proprietary and open source, and customized those systems for their particular uses. I myself have used and maintained predictive and autodialers, and trained others to do the same.

Further, I am familiar with the manner in which outbound dial lists are used and maintained in the telemarketing industry, which I understand to be similar to the debt collection industry in which The CBE Group, Inc. operates. Similarly, I am familiar and have experience with, and know how to use, databases containing cell block identifiers and ported number lists, both of which identify cellular type telephone numbers and are typically used in these industries.

Over the last twenty-four (24) years, I have also had extensive experience in a broad range of other areas in the electronic and information technology fields and obtained many certifications such as MCP 4.0, A+, Network+, MCP 2000, MCSA, MCSE, Linux+, I-Net+, Security+, CIW Security Analyst. From the hardware perspective, I have extensive experience in troubleshooting and repairing at the component level, and building various systems for various purposes. I have designed, built and maintained computer networks in a variety of environments from commercial businesses to very large DoD networks. I have taught approximately 1,000 others the skills to become network engineers themselves. I have had extensive experience in dealing with security breaches and hardening computer networks against those breaches. I have handled many computer forensic and E-Discovery matters, including internal investigations in companies, working at the FBI sponsored Regional Computer Forensics Laboratory, and founding a computer forensics and E-Discovery firm over 6 years ago. I have also had extensive experience with the set-up and use of predictive and auto dialers. (*See* Exhibit A – Resume of Jeffrey A. Hansen).

I have been called to testify in the following civil matters: *Craig Casey v. Valley Center Insurance Agency Inc.*, Case No. 37-2008-00004378-SC-SC-CTL (San Diego Superior Court); *Stemple v. QC Holdings*, Case No. 12-CV-1997-CAB-WVG (S.D. Cal.); *Hahn v. Massage Envy Franchising*, Case No. 3:12-cv-00153-DMS-BGS (S.D. Cal.); *Abdeljalil v. Gen. Electric Capital Corp.*, Case No. 12-cv-02078-JAH-MDD (S.D. Cal.); *Jasminda Webb v. Healthcare Revenue Recovery Group, LLC*, Case No. C 13-0737 JD (N.D. Cal.); *Amanda Balschmiter v. TD Auto Finance, LLC*, Case No. 2:13-cv-01186 (E.D. Wisc.); and, *Jordan Marks v Crunch San Diego, LLC*, Case No. 14-CV-0348-BAS-BLM (S.D. Cal).

*Work and Analyses in this Case Regarding The CBE Group's Use of Automatic Telephone Dialing Systems.*

I have reviewed a patent application for a clicker program, produced by the The CBE Group attached as Exhibit B - patent application for clicker.

Based upon the review of the patent application for this "clicker" program, this program is not an ATDS by itself. In fact, it is not a dialer. There is no evidence that this program is capable of placing a telephone call. It has no connection to any phone lines of any kind according to the patent application. My conclusion, this "clicker" application is not what was used to initiate the phone calls to the plaintiff. This "clicker" application is an application that is used to build lists of numbers to call, much the same way that a telemarketer would first build a list of numbers with Microsoft Excel, a CSV editing program, or even the database on the dialer itself. The question of whether the system can automatically call a list of numbers has nothing to do with how the list of numbers was acquired or assembled. This patent application seems to only address the building of the list and nothing about how the list is called. The patent application however does give clues that there is a system, apart from the "clicker" application that was used to initiate calls to the plaintiff's cellular phone, calling the a list that the "clicker" application was used to build. The dialer that was used to initiate the calls is what I expect to opine on after receiving more discovery responses. If the defendant contends that this "clicker" application is what initiated the calls, more discovery would be required as to how this application calls the list of numbers and establishes a connection with the telephone network, which would likely require an on-site inspection of the system.

On page 1 of the patent application the "Abstract" reads:

5

*MYRIAM ALMARAZ v. THE CBE GROUP, INC.*
EXPERT REPORT OF JEFFREY A. HANSEN

    "A method for manual intervention in a dialing process includes maintaining a list of records containing phone numbers in a database stored on a computer readable storage medium, receiving at a computer and from the user a click for each of the records within the list of records in the database stored on the computer readable storage medium, and storing on a computer readable storage medium a record of the click, an identity of the user performing the click, and an association between the click and one of the records within the list of records. For each click, the method provides for electronically communicating the corresponding phone number of one of the records within the list to a dialing device for dialing the phone number. The method may further include dialing the phone number using the dialing device." (Exhibit B - patent application for clicker page 1)

    This abstract is defining a program that adds a column to a table of phone numbers within a database and places a value in that column indicating that a user clicked a button. The illustration on page 1 of the application shows that a click is recorded into the list, a comment is added, and the resulting list of numbers is contained in a table of a database which the dialing device uses as the list of numbers to call (See Exhibit B - patent application for clicker page 1). Editing the dialing list or "campaign" list in place in the database is common. I myself will think of a contact that I would like to add or remove from the campaign after having already built the campaign.

    The figure on page 3 of the patent application for the "clicker" application shows the "clicker" application as a web based UI interacting with the database in which it is manipulating. Outside of that is the dialing system (See Exhibit B - patent application for clicker page 3). A typical predictive dialer, or any

6

*MYRIAM ALMARAZ v. THE CBE GROUP, INC.*
EXPERT REPORT OF JEFFREY A. HANSEN

automatic telephone dialing system, has several components to make up the storage of the list and the calling of the list. There is the database or list of numbers to call, the connection to a telephone carrier, and the terminal which the operator sits at with a headset or telephone. The database, the dialer, and the terminal may be on the same computer or may be spread across several computers working together as one system. This illustration, on page 3, shows that the dialer is in no way connected with the "clicker" application, but that the dialer will call whatever numbers are in the database (See Exhibit B - patent application for clicker page 1).

On page 4 of the patent application, Figure 2 shows that the user will select a list of numbers – contained in a database, click until all the records have an entry of the user's clicks, then the user will repeat this process for other lists. (See Exhibit B - patent application for clicker page 4,5,24 par. 0016, page 25 par. 0044, page 26 par. 0048-0050,)

On pages 7 through 22, the patent application for the "clicker" program has a series of what the user would be presented with on the screen of his/her computer. As illustrated, no screen of this application has anything with the initiating of telephone calls further indicating that this application was not used to call the plaintiff (See Exhibit B - patent application for clicker pages 7-22).

Page 25 paragraph 0044 makes very clear that this "clicker" application does not initiate phone calls:

> "… The manual dial application allows for a human being to enter unauthorized cell phone numbers into a list by clicking on an icon, … Once selected by the user through the clicking process, each of the cell phone numbers may then be dialed. The manual clicker application is preferably dialing device agnostic." (Exhibit B - patent application for clicker page 25 paragraph 44)

7

*MYRIAM ALMARAZ v. THE CBE GROUP, INC.*
EXPERT REPORT OF JEFFREY A. HANSEN

The user clicks each phone number adding it to a list. Once the list is complete, the list is then called by the dialer. The "clicker" program is not associated with the dialer, in fact, it is "dialer agnostic." This "clicker" program is simply a program to build a list of numbers which would later be called by a separate dialing system. Highlighting that clicking numbers in this "clicker" application does not initiate phone calls (Exhibit B - patent application for clicker page 25 paragraph 44). In paragraph 0057 on page 27, the applicant points out that while waiting for a call to come through, a user can spend that idle time clicking. The applicant points out that the person clicking does not need to be anywhere near a telephone or dialing system (Exhibit B - patent application for clicker page 27 paragraph 57).

This "clicker" program by itself is not an ATDS because it does not initiate phone calls. In the process of making automated calls to telephones, this "clicker" program replaces Mirosoft Excel, CSV Editor, a relational database, web scrapers or any other program used to compile a list of numbers which may or may not be called by a dialer. As illustrated on page page 26 paragraph 0051 of the patent application, the end result of using this "clicker" application is a list of "un-dialed phone numbers" (Exhibit B - patent application for clicker page 26 paragraph 51). The system at issue, in this case, is the system that dials the phone numbers, not the "clicker" application.

*Additional Work and Analyses*

In addition to identifying and analyzing the technology used to make the calls at issue in this case, I have been retained to examine the methodology and procedures used in gathering and assembling the data provided by The CBE Group, Inc.

Additionally, I will be examining future discovery responses and will be formulating additional expert opinions on the topics raised in those discovery responses as requested and appropriate.

*Amendments and Modifications.*

I reserve the right to amend, modify or supplement the statements and opinions set forth herein as appropriate.

_____
Jeffrey A. Hansen