UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-62026-CIV-COHN/SELTZER

S. RYAN STRAUSS,

      Plaintiff,

v.

THE CBE GROUP, INC., and
VERIZON NEW ENGLAND, INC.,

      Defendants.

_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant's Motion for Partial Summary

Judgment [DE 54] and Plaintiff's Motion for Partial Summary Judgment [DE 78]

(collectively, "Motions").  The Court has reviewed the Motions, the responses and

replies thereto, and the record in this case, and is otherwise advised in the premises.

For the reasons stated below, the Court will grant in part and deny in part Plaintiff's

Motion and grant Defendant's Motion in its entirety.

## I.    BACKGROUND

This action arises out of a series of phone calls placed by Defendant The CBE

Group, Inc. ("CBE") to the cellular telephone ("cell phone") number of Plaintiff S. Ryan

Strauss.  In April 2014, Defendant Verizon New England, Inc. ("Verizon") referred an

account belonging to a third party to CBE for collection.  CBE received Plaintiff's

telephone number from Verizon and believed that the number belonged to the third-

party debtor.  Thereafter, CBE placed 26 telephone calls to Plaintiff between April and

September 2014.[1]  Six of these calls were answered, and each time a CBE representative asked to speak with the third-party debtor by name.  Plaintiff did not tell CBE that he was not the third-party debtor or that CBE had called the wrong number.

CBE admits that on April 14 and 15, 2014, it placed its first two calls to Plaintiff using a Noble Systems Predictive Dialer under the mistaken belief that the number was a landline.  DE 100-1 ¶ 11.  Before the third call on April 18, CBE identified the number as associated with a cell phone and placed the remaining 24 calls to Plaintiff using CBE's Manual Clicker Application ("MCA").  In order to place a call using the MCA, at least as CBE has configured it, an agent must manually initiate the call by clicking a computer mouse or pressing a keyboard enter key.  Id. ¶ 23.  The MCA then uses a Noble Systems device to connect the call to a telephone carriers' network.  Id. ¶ 27.

Plaintiff initiated this lawsuit against CBE on September 25, 2015, alleging violations of the Telephone Consumer Protection Act, 47 U.S. § 227, et seq. ("TCPA") (Count I), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") (Count II), and the Florida Consumer Collection Practices Act, Fla. Stat. § 559, et seq. ("FCCPA") (Count III).[2]  See DE 1.  On February 4, 2016, CBE moved for partial summary judgment on Plaintiff's FDCPA and FCCPA claims, all TCPA claims premised on the 24 calls placed after April 15, 2014, and claims for "willful and knowing" violations of the TCPA.  See DE 54.  Thereafter, Plaintiff filed a Second Amended Complaint that added Verizon as a Defendant and sought to hold it vicariously liable for CBE's alleged TCPA violations.  See DE 62 ¶ 38.  On February 26, 2016, Plaintiff filed his own Motion

---

[1] Plaintiff's Motion claims that CBE placed 30 calls.  However, this number was derived from a discovery response that was subsequently corrected.  The corrected discovery response, CBE's call records, and even the findings of Plaintiff's own expert firmly establish that CBE placed 26 calls to the number at issue.
[2] Livevox, Inc. was also named as a Defendant in the original Complaint but was later voluntarily dismissed as a party to this action.  See DE 50.

for Partial Summary Judgment as to all three Counts of the Second Amended Complaint, but requested a jury trial on the issue of whether Defendants knowingly and willfully violated the TCPA.  See DE 78 at 3.

## II.    LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the nonmoving party's case."  Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).  Therefore, the nonmoving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial."  Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990).  In deciding a summary-judgment motion, the Court must

view the facts in the light most favorable to the nonmoving party.  Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

**III.    DISCUSSION**

Plaintiff and CBE both moved for partial summary judgment, arguing that there is no genuine dispute of material fact regarding Defendants' liability under the TCPA or CBE's liability under the FDCPA and FCCPA.  With respect to the TCPA claim, the parties contest whether Verizon can be held vicariously liable for CBE's alleged violations and whether CBE placed the 24 calls after April 15, 2014, using an "automatic telephone dialing system," or "ATDS."  The parties also contest whether CBE's debt-collection practices violate the FDCPA and FCCPA.  The Court finds that summary judgment should be entered for Plaintiff and against only CBE on the TCPA claims for calls placed on April 14 and 15, 2014.  However, summary judgment shall be entered in Defendants' favor on the remaining TCPA claims and in CBE's favor on the FDCPA and FCCPA claims.

**A.  TCPA**

The TCPA prohibits making "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  The TCPA creates a private right of action where a person may bring "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater."  Id. § 227(b)(3)(B).  "The TCPA is essentially a strict liability statute" that "does not require any intent for liability except when awarding treble damages."  Alea

4

London Ltd. v. Am. Home Servs., Inc., 638 F.3d 768, 776 (11th Cir. 2011).  However, if the court finds that the defendant willfully or knowingly violated the regulations prescribed under the TCPA, it may increase the damages award to up to three times the amount otherwise recoverable.  47 U.S.C. § 227(c)(5).

The parties agree that there is no evidence that Plaintiff ever provided his prior express consent to receive the calls at issue or that the calls were for an emergency purpose.  Additionally, CBE does not contest that it used an ATDS to place its first two calls to Plaintiff on April 14 and April 15, 2014, because CBE incorrectly believed at the time that Plaintiff's telephone number was a landline.  See DE 100-1 ¶ 11.  However, the parties dispute whether CBE used an ATDS to make the subsequent 24 calls to Plaintiff after CBE had correctly identified Plaintiff's number as a cell phone.

The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator, and (B) to dial such numbers."  47 U.S.C. § 227(a)(1).  Various pieces of equipment and software may be combined to form an ATDS, thereby subjecting the user to the restrictions of the TCPA.  In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014 ¶ 131 (FCC July 3, 2003) ("2003 FCC Order").  The term "capacity" in the definition of an ATDS refers not only to a device's "present capacity" or "current configuration" but also includes its "potential functionalities."  In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 FCC Rcd. 7961 ¶¶ 16–20 (FCC July 10, 2015).

A predictive dialer constitutes an ATDS within the meaning of the TCPA.  2003 FCC Order ¶ 133.  A predictive dialer is "hardware, when paired with certain software,

[which] has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers" without human intervention.  Id. ¶¶ 131–32.  To determine whether a dialer is a predictive dialing system, and therefore an ATDS, "the primary consideration . . . is whether human intervention is required at the point in time at which the number is dialed."  Brown v. NRA Grp., LLC, No. 6:14-CV-610-ORL-31, 2015 WL 3562740, at *2 (M.D. Fla. June 5, 2015) (citation omitted); see also Legg v. Voice Media Grp., Inc., 20 F. Supp. 3d 1370, 1374 (S.D. Fla. 2014) (explaining that "defining characteristic" of ATDS is "capacity to dial numbers without human intervention").

### 1.  Plaintiff Is Entitled to Summary Judgment Against CBE on the TCPA Claims for Calls on April 14 and April 15, 2014.

Plaintiff has proven all of the necessary elements for his TCPA claims against CBE for the calls placed on April 14 and April 15, 2014.  As noted above, CBE does not contest that it used the Noble Systems Predictive Dialer to place its first two calls to Plaintiff's cell phone.  See id.  A predictive dialer is clearly an ATDS within the meaning of the TCPA.  2003 FCC Order ¶ 133.  And there is no evidence to suggest that the calls were made with Plaintiff's consent or for emergency purposes.

However, Plaintiff has not created a genuine dispute as to whether Verizon may be held vicariously liable.  To determine the existence of vicarious liability, a court must first assess whether the principal had the necessary agency relationship with the direct wrongdoer to support such liability.  See CFTC v. Gibraltar Monetary Corp., 575 F.3d 1180, 1189 (11th Cir. 2009) (per curiam).  A court may find an agency relationship where the principal exercised "substantial control" over the agent's actions, ratified the agent's conduct, or made representations that the agent acts with authority.  In re Dish

6

Network, LLC, 28 FCC Rcd. 6574, 6586–87 (FCC May 9, 2013).  "The existence of this agency relationship is a question of fact, . . . and summary judgment on vicarious liability is appropriate only in cases where evidence of the relationship is clear and unequivocal." Legg, 20 F. Supp. 3d at 1377 (citing Johnson v. Unique Vacations, Inc., 498 Fed. App'x. 892, 894 n.3 (11th Cir. 2012) (per curiam)).

Instructive to the Court's present analysis, the FCC has provided some examples of conduct, albeit in the context of telemarketers, which the court may consider in determining whether apparent authority exists.  In re Dish Network, LLC, 28 FCC Rcd. at 6592.  These factors include the principal: (1) granting the agent access to information and systems that normally would be within the principal's exclusive control, including customer information; (2) allowing the agent to enter consumer information into the principal's sales or customer systems; (3) giving the agent authority to use the principal's trade name, trademark, or service mark; (4) approving, writing, or reviewing a transcript for the caller to use; or (5) knowing of TCPA violations and failing to stop such violations.  Id. at 6593–94.

Here, Plaintiff has not established that a "clear and unequivocal" agency relationship exists between CBE and Verizon.  Plaintiff relies on a Master Subscription Agreement ("Agreement") and excerpts from the deposition of CBE's corporate representative, Terry Johnson, to prove agency.  However, the Master Subscription Agreement does not establish that an agency relationship existed in April 2014. The Agreement was dated March 6, 2015, almost a year after CBE made the first two calls to Plaintiff.  Furthermore, Verizon Wireless was a party to the Agreement, but Defendant Verizon of New England, Inc. was not.  Johnson's testimony does not prove that

Verizon vested CBE with actual or apparent authority, either.  The testimony does reveal that CBE gave Verizon limited access to its information and systems so that Verizon could conduct quality control measures, such as performing random audits of CBE's collection calls, conducting onsite visits every six to nine months, and reviewing collection reports made available by CBE through its client portal.  But such quality control falls short of establishing "substantial control" or apparent authority by the FCC's standards.  According to Johnson, Verizon gave CBE limited information about a debt and the corresponding debtor, which was essential for CBE to initiate collection.  And nothing in his testimony suggests that Verizon, as the alleged principal, gave CBE access to its systems, authorized CBE to use its name or marks, or knew that CBE was violating the TCPA and failed to stop it.  Even if Verizon participated in the preparation of the transcript read by CBE agents, on balance, this evidence is insufficient to create an issue of disputed material fact for trial regarding an agency relationship between CBE and Verizon.  Plaintiff therefore has not proven that Verizon is vicariously liable as a matter of law.

## 2.  CBE Is Entitled to Summary Judgment on the TCPA Claims for Calls After April 15, 2014.

Plaintiff has failed to create a material dispute regarding CBE's use of an ATDS after April 15, 2014.  The evidence clearly establishes that CBE made 24 calls using the MCA.   And there appears to be no disagreement that the MCA, by itself, lacks the capability to dial predictively.  At issue is whether the Noble equipment that the MCA utilized to connect calls was a predictive dialer or was otherwise classified as an ATDS when paired with the MCA.  The overwhelming weight of the evidence indicates that it was not.

Johnson testified that although CBE used a Noble Systems Predictive Dialer to call landlines, the MCA that CBE used to dial cell phones was not connected to a predictive dialer.  DE 49-16 at 21:25–22:16, 61:7–12.  Instead, after a CBE representative clicked to initiate a call, the MCA utilized Noble connecting devices called Corphost1 and Corpost2, which "only allow[] for pass-throughs particularly coming from the MCA application" and are "incapable of doing any type of automatic outbound dialing."  Id. at 110:6–15, 112: 9–16.  According to Johnson, Corphost1 and Corpost2 are "completely independent and separate from the Noble predictive dialer," and such equipment "cannot dial predictively, does not use a random or sequential number generator, and does not have the capacity to store, produce, or dial numbers using a random or sequential number generator."  DE 100-1 ¶¶ 27–28.  Because CBE has presented substantial evidence that human intervention is essential at the point and time that the number is dialed using the MCA and that the Noble equipment used does not have the functionalities required to classify it as a predictive dialer, Defendants have made a prima facie showing that they are not liable as a matter of law for the calls made after April 15, 2014.

Plaintiff primarily relies on the Report of its expert, Jeffrey A. Hansen, to establish that the Noble equipment used to place the calls to Plaintiff was in fact the Noble Systems Predictive Dialer.  Hansen's Report carefully details the capacities of the MCA and the Noble Systems Predictive Dialer that he believes CBE used.  However, Hansen does not address the capabilities of Corphost1 and Corpost2, the Noble equipment that CBE claims to have actually used with the MCA.  Nor does he explain why he does not believe that CBE used Corphost1 and Corpost2 to place the calls to Plaintiff.  Instead,

9

the Report merely assumes that CBE was using the same Noble dialing equipment to make all calls to Plaintiff and switching that equipment between "predictive and manual mode." See DE 49 at 20. Thus, Hansen's Report is insufficient to create a genuine issue of material fact regarding the dialing service that CBE used. Plaintiff also attempts to use Johnson's testimony to show that a predictive dialer was used after April 15, but the excerpts Plaintiff cites do little more than establish that CBE uses a Noble Systems Predictive Dialer to call landlines, which is not directly relevant.

Because Plaintiff has failed to create a material dispute over whether CBE placed calls to his cell phone using an ATDS for the 24 calls after April 15, 2014, his TCPA claims based on those calls fail as a matter of law. Summary judgment will be entered in favor of Defendants as to those claims.

### 3. Willful and Knowing

CBE is also entitled to summary judgment with respect to Plaintiff's claim that CBE's TCPA violations were willful and knowing. The evidence overwhelmingly demonstrates that at the time the calls were placed on April 14 and April 15, 2014, CBE did not know that Plaintiff's number was assigned to a cell phone. See, e.g., DE 100-1 ¶ 11. Plaintiff has provided no evidence to put CBE's knowledge and intent at issue. Because CBE has highlighted an absence of evidence to support Plaintiff's claim and Plaintiff has failed to produce any further evidence, CBE is entitled to summary judgment on the issue of whether its TCPA violations were willful and knowing.

### B. FDCPA/FCCPA

The FDCPA is a strict liability statute, the purpose of which is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors

10

who refrain from using abusive debt practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.  In order to prevail on an FDCPA claim, a plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." Kaplan v. Assetcare, Inc., 88 F. Supp. 2d 1355, 1360–61 (S.D. Fla. 2000) (citation omitted).  "The FCCPA has parallel requirements to state a claim." Ziemniak v. Goede & Adamczyk, PLLC, No. 11-62286-CIV, 2012 WL 5868385, at *2 (S.D. Fla. Nov. 19, 2012).

The parties dispute whether Plaintiff has sufficiently proven his FDCPA and FCCPA claims for several reasons.  First, Defendants argue that Plaintiff lacks standing to bring his claim under the FCCPA because he cannot prove that he is a "debtor" or an "alleged debtor."  Second, the parties contest whether Plaintiff has presented sufficient evidence that the debt CBE was attempting to collect was a consumer debt.  Third, Defendants maintain that Plaintiff cannot prove that CBE engaged in the prohibited activity of calling "repeatedly or continuously with the intent to annoy, abuse, or harass" because only one telephone call at issue occurred within the one-year limitations period. See 15 U.S.C. § 1692d(5).  Finally, Defendants contend that Plaintiff has failed to prove that CBE used "unfair or unconscionable means" to collect a debt, as prohibited by § 1692f, because Plaintiff has claimed no misconduct other than violations of other sections of the FDCPA.  The Court need only address the first two arguments to hold that CBE is entitled to summary judgment on the FDCPA and FCCPA claims.

11

1. **Plaintiff Lacks Standing to Bring His FCCPA Claim.**

Plaintiff's FCCPA claim fails as a matter of law because Plaintiff has not established that he has standing as a debtor or alleged debtor.  The FCCPA provides that a "debtor may bring a civil action against a person violating" the statute's provisions.  Fla. Stat. § 559.77(1).  Unless the context indicates otherwise, the FCCPA uses the term "debtor" to refer to "any natural person obligated or allegedly obligated to pay any debt."  Id. § 559.55(8).  Courts have interpreted this language to mean that an "alleged debtor" is protected by the Act from the prohibited practices set forth in § 559.72, under which Plaintiff brings his claim.  See Halsten v. Target Nat. Bank, No. 2:13-CV-287-FTM-38, 2013 WL 3804844, at *3 (M.D. Fla. July 19, 2013) (citing cases).  In determining whether a plaintiff was allegedly obligated to pay a debt, "the question is not whether Defendant thought [Plaintiff] was obligated to pay the debt; rather, it is whether Defendant communicated to the called party that she [or he] was obligated."  Fini v. Dish Network, LLC, 955 F. Supp. 2d 1288, 1298 (M.D. Fla. 2013).  Thus, when a creditor calls the wrong number and alleges or implies that the call recipient owes a debt, the recipient is an alleged debtor for purposes of the FCCPA.  Smith v. Markone Fin., LLC, No. 3:13-CV-933-J-32MCR, 2015 WL 419005, at *4 (M.D. Fla. Feb. 2, 2015) (citations omitted); see also Fini, 955 F. Supp. 2d at 1298 (finding that collector had implied call recipient owed debt where collector threatened to discontinue service if call recipient failed to make payment and recipient had already informed collector that she was not the debtor); Halsten, No. 2:13-CV-287-FTM-38, 2013 WL 3804844, at *4 (holding that plaintiff had sufficiently alleged implication of debt obligation where collector continued to call plaintiff after he had repeatedly informed collector he was not the debtor).

It is undisputed that CBE was attempting to collect an obligation incurred by a third party and that Plaintiff was not the debtor.  Plaintiff instead attempts, without success, to establish standing as an alleged debtor.  The transcripts of CBE's calls to Plaintiff clearly demonstrate that CBE never told Plaintiff that he owed or was obligated to pay any money.  Nor did CBE imply that Plaintiff owed a debt.  In each of the calls that Plaintiff answered, CBE asked to speak to the third-party debtor by name.  CBE did not leave voicemails.  Plaintiff never informed CBE that it was dialing the wrong number or that he was not the third-party debtor, and all evidence indicates that CBE believed that it was calling the third-party debtor.  Because CBE has proven that there is an absence of evidence to support Plaintiff's standing to bring his FCCPA claim, the Court will grant summary judgment in CBE's favor as to that claim.

**2. <u>Plaintiff Has Failed to Prove That Collection Was for a Consumer Debt.</u>**

Even if Plaintiff could establish standing, he has failed to meet his burden in establishing an essential element of any FDCPA and FCCPA claim—that the debt CBE was attempting to collect was a consumer debt.  "To recover under both the FDCPA and the FCCPA, . . . a plaintiff must make a threshold showing that the money being collected qualifies as a 'debt.'"  <u>Oppenheim v. I.C. System, Inc.</u>, 627 F.3d 833, 836–37 (11th Cir. 2010).  In both the FDCPA and the FCCPA, "debt" means "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes . . . ."  15 U.S.C. § 1692a(5); Fla. Stat. § 559.55(1).

To prove that the debt in question was a consumer debt, Plaintiff cites to (1) Johnson's testimony that the purpose of the calls was to collect a "debt"; (2) account

13

notes indicating that the debt was for cable; and (3) a certified business record that CBE is a licensed "Consumer Collection Agency."  However, this evidence does not prove that the debt in question was incurred for "for personal, family, or household purposes." First, the common definition of "debt" is simply "[t]hat which is owed or due; anything (as money, goods, or service) which one person is under obligation to pay or render to another."  "Debt," <u>Oxford English Dictionary Online</u>, 2016, http://www.oed.com/view/ Entry/47935?rskey=yfT4L8&result=1&isAdvanced=false.  The Court finds little support for Plaintiff's argument that when Johnson referred to "debt" in his testimony, he meant "consumer debt" as defined by the FDCPA, rather than the everyday meaning of the word.  Although there is one instance during the deposition where Johnson refers to the debt in question as "consumer debt," the Court does not find this sufficient to create a genuine dispute of fact, as the overwhelming weight of the evidence indicates that neither Johnson nor anyone else at CBE knew or had any documentation identifying the purpose for which the third-party debtor incurred the obligation.  Second, the fact that the debt was for cable does not prove that it was incurred "primarily for personal, family, or household purposes."  Cable service can just as easily be purchased for a business or commercial purpose as for a home or other personal use.  Finally, CBE's licensure as a "Consumer Collection Agency" does demonstrate that part of CBE's business involves the collection of consumer debts, which CBE acknowledges.  But the license does not prove that CBE collects consumer debts exclusively.  Because Plaintiff is unable to prove that the purpose of CBE's calls was for a consumer debt, he is unable to establish an essential element of his FDCPA and FCCPA claims, and the Court will grant summary judgment in CBE's favor as to those claims.

IV.    **CONCLUSION**

In sum, Plaintiff has proven that he is entitled to summary judgment against CBE on his TCPA claims for the two calls placed on April 14 and 15, 2014.  However, Defendants have successfully demonstrated that there is an absence of evidence to hold Verizon vicariously liable for those calls.  Furthermore, Defendant CBE has shown that Plaintiff is unable to establish standing to pursue his FCCPA claim, that there is an absence of evidence for Plaintiff to prove an essential element of his FDCPA and FCCPA claims, and that CBE is entitled to judgment as a matter of law.  Accordingly it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment [DE 78] is **GRANTED in part** and **DENIED in part** as follows:

1. Summary judgment is **GRANTED** in Plaintiff's favor on his TCPA claim for the calls placed on April 14 and 15, 2014.  Plaintiff is entitled to $500 per call in statutory damages from Defendant The CBE Group, Inc., for a total of $1,000.

2. Plaintiff's Motion is **DENIED** in all other respects.

It is further **ORDERED AND ADJUDGED** that Defendant's Motion for Partial Summary Judgment [DE 54] is **GRANTED** as to the remaining claims.  The Court will enter a separate judgment consistent with this Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 25th day of March, 2016.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF